**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES EQUAL**
**EMPLOYMENT OPPORTUNITY**
**COMMISSION,**

      **Plaintiff,**

**TAMMY SHELTON-LEIGH and**
**TANYA YOUNG-MORRISON**

      **Plaintiff Intervenors,**

**v.**　　　　　　　　　　　　　　　　　　　　**Case No. 8:04-cv-2155-T-24TBM**

**ROOMS TO GO, INC., and**
**R.T.G. FURNITURE CORP.,**[1]

      **Defendants.**
_____/

**O R D E R**

THIS MATTER is before the court on **Plaintiff's Motion to Compel Complete Discovery Responses or, in the Alternative, to Strike Defendants' Sixth Affirmative Defense** (Doc. 35). By its motion, the United States Equal Employment Opportunity Commission seeks an Order, pursuant to Fed. R. Civ. P. 37, compelling Defendants to provide complete responses to its First Request for Production of Documents and First Set of Interrogatories as each relate to Defendants' financial condition and internal investigation of

---

[1] On August 24, 2005, Plaintiff filed an Amended Complaint adding R.T.G. Furniture Corp. as a defendant in this action after being informed by opposing counsel that the Plaintiff Intervenors had been employed by R.T.G. Furniture Corp., not Rooms to Go, Inc.

the Plaintiff Intervenors' internal complaints of discrimination.[2]  Defendant Rooms to Go, Inc., filed a response in opposition (Doc. 40).[3]

Here, the United States Equal Employment Opportunity Commission (hereinafter "EEOC" or "Plaintiff") brings this action alleging that management and non-management officials of the Defendants subjected the Plaintiff Intervenors and other similarly situated individuals to harassment based on sex and/or race, which was sufficiently severe and pervasive to constitute a hostile, intimidating work environment, pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A.[4]  Tammy Shelton-Leigh and Tanya Young-Morrison filed an Amended Complaint in Intervention alleging identical claims, as well as claims under the Florida Civil Rights Act.  (Doc. 32).

By its instant motion, Plaintiff seeks to compel information and documents pertaining to Defendants' finances and investigation of the Plaintiff Intervenors' internal complaints and

---

[2] According to Plaintiff, these discovery requests were propounded on March 8, 2005, and Defendants responded to the interrogatories on April 27, 2005, and to the document request in May, June and July 2005.  (Doc. 35 at 3).  Plaintiff does not explain why it waited some five months to file its instant motion to compel.  Of note, the discovery cut-off in this cause was November 18, 2005.  See (Doc. 16).

[3] Because the discovery requests at issue were directed toward Rooms to Go, Inc., it is the Defendants' position that Plaintiff's instant motion seeks to compel discovery from a company that never employed the Plaintiff Intervenors and therefore the requests at issue are not relevant.  At present, both Rooms to Go, Inc., and R.T.G. Furniture Corp. are Defendants and the court addresses the motion as to both.  Given the court's ruling on this motion, it is unnecessary to determine which is the appropriate Defendant or whether both are.

[4] The allegations with respect to Ms. Morrison allege only sexual harassment.  Am. Compl. (Doc. 26, ¶ 9(a)).

2

charges. Specifically, Plaintiff seeks information and documents in response to the following requests to which the Defendants previously objected:

> Document Request 1-10. Please provide copies of Defendants' audited (or unaudited if audited are unavailable) financial statements, balance sheets, and any documents showing the reserves, assets and net worth of Defendant for each fiscal or calendar year from January 1, 2000, through the present.
> 
> \*\*\*
> 
> Interrogatory 1-9. Please list Defendants' gross annual sales, gross annual revenue, net income, and net annual profit for each fiscal year since January 1, 2000, including the fiscal year which contains the date January 1, 2000, and identify the dates that comprise Defendants' fiscal year.
> 
> \*\*\*
> 
> Interrogatory No. 1-5. Please identify any and all documents and recorded materials (including, but not limited to, transcripts, tapes, videos, personnel records and files, notes, memoranda, letters to or from supervisors, supervisors' notes, documents regarding separation and/or termination from employment, disciplinary files and/or any other employment information contained in a file of any type, etc.) pertaining or relating in any way to any interviews and/or investigations into any sexual and/or racial harassment allegations by Tanya Young Morrison, Tammy Shelton Leigh and any other individuals employed at Defendants' Seffner, Florida, location during the period January 1, 1995, to present.
> 
> \*\*\*
> 
> Document Request 1-5. Please provide any and all documents referring to, recording, evidencing, or reflecting interviews, statements, or transcripts of statements of all persons interviewed in connection with this action.

As to the financial discovery sought, Plaintiff argues that Defendants' financial condition is directly related to its claim for punitive damages and is therefore relevant and subject to disclosure during discovery. Regarding the information sought relating to Defendants' investigations of the Plaintiff Intervenors' charges of discrimination, Plaintiff argues that information is relevant to whether Defendants can prove their Sixth Affirmative Defense,

3

which requires, among other things, that Defendants promptly and effectively investigated the complaints of harassment.[5] Plaintiff argues that, contrary to Defendants' assertion, this discovery is not protected from disclosure by the work product privilege, and even assuming that it is, Defendants waived the privilege by asserting their Sixth Affirmative Defense. Relying primarily on Walker v. County of Contra Costa, 227 F.R.D. 529 (N.D. Cal. 2005) and EEOC v. Kronberg Bagel Co. d/b/a Bakin' Bagels, Case No. 2:00-cv-409-FtM-29DNF (M.D. Fla. Oct. 31, 2001), Plaintiff argues that the Defendants should be required to disclose all documents or information relating to their investigation, both before and after the charges were filed, with the exception of information and documents reflecting legal analysis or opinions.[6] Plaintiff argues further that it has a substantial need for this information since it cannot meaningfully address Defendants' Sixth Affirmative Defense without it, it has no other means to obtain this information, and it would be prejudiced if Defendants used this information at trial never having produced it to Plaintiff.

---

[5] By their Sixth Affirmative Defense, Defendants allege they are "not liable for any conduct alleged in the Amended Complaint to the extent that [they] exercised reasonable care to prevent and/or correct promptly any harassing behavior, and the individuals on whose behalf the Amended Complaint is brought unreasonably failed to avoid harm and failed to avail themselves of [their] procedures and policies for reporting and investigating such conduct, which procedures provided an opportunity for prompt and effective remedial action to be taken by [them]."  (Doc. 27 at 4).

[6] In light of the ruling in Bakin' Bagels, Plaintiff has agreed to limit these requests as follows: (a) with respect to any investigation of a complaint of racial or sexual harassment that was made before [defendants] received notice that a charge of discrimination had been filed with an administrative agency, please provide all requested documents and information. Since these investigations clearly could not have been conducted in anticipation of litigation, no portion of the responsive information or documents is protected by the work product privilege; and (b) with respect to internal investigations conducted by [defendants] in response to the filing of an administrative charge of discrimination, produce all requested information and portions of documents redacted to exclude the investigator's conclusions. (Doc. 35 at 13).

Defendants urge the court to deny the motion in its entirety, arguing that Plaintiff does not need their financial information in order to submit a punitive damages request to a jury, punitive damages are capped at $300,000, and they already have disclosed to Plaintiff their insurance coverage which indemnifies them against punitive damages awards and verifies adequate coverage to cover any judgment entered in this case.  Defendants also argue that the requested financial information is confidential and proprietary, and they submit the affidavit of their general counsel in support thereof.[7]  Defendants argue further that this information should not be ordered disclosed because Plaintiff's request for punitive damages is factually unfounded.  As for their investigative reports, Defendants argue that they do not rely on the investigative file as the basis for their Sixth Affirmative Defense.  As such, they argue that the work product privilege protects these reports from disclosure, they have not waived that privilege, and Plaintiff cannot defeat the privilege because the materials were prepared in anticipation of litigation as evidenced by the fact that the investigation was initiated upon the direction of their attorney after the EEOC charges were filed.  Defendants argue further that the investigation reports contain and reflect conclusions and opinions and are thus immune from discovery, and to the extent the reports constitute fact work product, Plaintiff has not shown that it has been unable to obtain the equivalent information elsewhere.

Upon consideration, **Plaintiff's Motion to Compel Complete Discovery Responses or, in the Alternative, to Strike Defendants' Sixth Affirmative Defense** (Doc. 35) is **GRANTED in part** and **DENIED in part**.  Initially, the court finds that discovery requests

---

[7] To the extent that Plaintiff's concern relates to Defendants' ability to pay a judgment, Defendants are willing to secure a bond or letter of credit for that purpose in lieu of disclosing their financial information.  Aff. of J. Michael Kettle (Doc. 40, Ex. 1 at ¶ 9).

5

pertaining to Defendants' finances (Request No. 1-10 and Interrogatory No. 1-9) are overly broad. In addition, while financial information such as a simple balance sheet is relevant to a claim of punitive damages in a Title VII case, see E.E.O.C. v. Klockner H & K Machines, Inc., 168 F.R.D. 233, 235-36 (E.D. Wis. 1996), the court finds that disclosure of such at present is premature, see Bakin' Bagels, Case No. 2:00-cv-409-Ft-M -29DNF. However, should the issue of punitive damages survive summary judgment, Plaintiff shall be entitled to a verified disclosure of Defendants' current net worth, subject to a protective order limiting such disclosure to use in these proceedings only.[8] In regard to the investigative discovery requests, accepting defense counsels' representations as true and accurate, the court finds that Defendants have not waived their right to the work product privilege because their Sixth Affirmative Defense does not rely on the investigation performed by Janet Gerow, their manager of Human Resources. Ms. Gerow's investigation appears to have been conducted at the direction of Defendants' general counsel and in anticipation of litigation. To the extent that the request seeks opinion work product, Plaintiff concedes it is not entitled to it. To the extent that Plaintiff seeks only fact work product, the court is not convinced by its pleadings that it has not obtained the equivalent of such information as may be within the investigative file through other investigative and discovery sources.[9] In accordance with the provisions of

---

[8] It appears that the Plaintiff Intervenors were employed by R.T.G. Furniture Corp., and that any such disclosure would be due only for this corporation. However, should it develop that Rooms To Go, Inc., may also have liability in this suit as an employer, then it too should make such disclosure.

[9] This ruling assumes that the only internal investigation conducted by Defendants and in dispute here is that performed by Ms. Gerow. This is not entirely clear as the privilege log appended to Defendants' response does identify "Investigation[s] of [Defendants'] Internal Complaint[s]," in addition to Ms. Gerow's notes. As the parties recognize, an investigation conducted by Defendants on the Intervenors' complaints prior to the initiation of the EEOC

6

Rule 26 (b)(3), to the extent that Defendants have records documenting any complaints (oral or otherwise) of sexual and/or racial harassment made by the Plaintiff Intervenors, they shall disclose the same and produce a copy thereof or otherwise make it available for copying within fifteen (15) days of the date of this Order.  In all other aspects, the motion is DENIED.[10]  Obviously, given the Defendants' position on this motion, neither Defendant may assert at trial any part of Ms. Gerow's investigation in support of their Sixth Affirmative Defense (or any other affirmative defense) unless such matters have been duly disclosed.

**Done and Ordered** in Tampa, Florida, this 2nd day of December 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

process or this suit would likely be discoverable regardless of the work product doctrine and the court assumes that discovery has occurred in relation to any other such investigations.

[10]Interrogatory 1-5 seeks the identity of documents pertaining to interviews and investigations into the complaints of the Intervenors "and any other individuals employed at Defendants' Seffner, Florida, location during the period January 1, 1995, to present." However, no complaint is made by the Plaintiff on this motion as to this part of the interrogatory and the court does not address it .

7